(92 South. 750)

No. 23755.

## MYERS v. HART.

(July 17, 1922.)

*(Syllabus by Editorial Staff.)*

**1. Partnership ⬤⟶328(3)—Plaintiff's testimony as to lumber used by defendant held too vague.**

Plaintiff's testimony, in a suit for a partnership settlement, that defendant used lumber belonging to him worth about $100, without stating the quantity of lumber or its exact value, *held* too vague upon which to base a judgment, especially when contradicted by defendant.

**2. Partnership ⬤⟶93—Managing partner held justified in hauling lumber himself for firm at price greater than that previously paid.**

Where persons hauling lumber for a partnership for 60 cents a thousand quit, if the managing partner could not haul or hire the hauling done at that price, and $1 a thousand was a reasonable price, he was justified in hauling it himself at that price.

**3. Partnership ⬤⟶328(3)—Evidence held to show managing partner's charge for hauling lumber not excessive.**

In a suit for a partnership settlement, evidence *held* to show that the managing partner's charge for hauling lumber himself was not excessive.

**4. Partnership ⬤⟶173 — Purchase price of timber dealt with as belonging to partnership held a firm liability.**

Where timber, for which a managing partner gave his note with the other partner as surety, was dealt with like any other timber belonging to the partnership, its purchase price was a partnership liability, and the amount paid one taking up the note was a proper charge against the partnership.

**5. Partnership ⬤⟶83—Managing partner held not entitled to compensation for work not done as manager.**

Where, under a partnership agreement, the managing partner owed his entire time and services to the management of the partnership without remuneration, he was not entitled to salary for work not done as manager, but as foreman of the firm's sawmill, etc.

**6. Partnership ⬤⟶328(3)—Evidence held to show charges correct.**

In a suit for a partnership settlement, evidence *held* to show that the amounts charged by the managing partner for logging and stumpage were correct.

**7. Partnership ⬤⟶87 — Partner agreeing to pay bookkeeper salary, but failing to do so, held liable for one-half thereof.**

Where a partner agreed to pay the salary of a bookkeeper, but failed to do so, he was liable on a settlement for one-half of the amount paid the bookkeeper by the partnership.

**8. Partnership ⬤⟶340—Property not divisible in kind must be sold upon settlement.**

Where the only assets of a sawmill partnership left after destruction of the mill by fire consisted of an engine, boiler, and pipe, not divisible in kind, it must be sold upon a settlement.

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Suit by George W. Myers against Ed Hart for a partnership settlement. From the judgment, plaintiff appeals. Amended and affirmed, and case remanded.

McClendon, Morelock & Seals, of Homer, for appellant.

Goff & Barnette, of Arcadia, for appellee.

By Division B, composed of Justices O'NIELL, LAND, and BAKER.

LAND, J. On February 23, 1915, plaintiff and defendant formed a partnership for the purpose of operating a sawmill in Claiborne parish, the losses to be equally borne and the profits to be equally divided.

The plaintiff alleges that the defendant managed the affairs of the said partnership from the date of its formation, until the sawmill plant was destroyed by fire in September, 1916, and and sold the output of the sawmill, and made a profit of more than $11,000, one-half of which plaintiff claims belongs to him. Plaintiff also alleges that said partnership is indebted to him in the further sum of $100, for the value of certain lumber that

was on the yards of the sawmill at the time the partnership was entered into, and which plaintiff alleges was used by the partnership. Alleging that defendant has appropriated to his own use the entire profit derived from the operation of the said sawmill, and has failed and refused to account for same, plaintiff prays for the dissolution of the partnership, the settlement of its affairs, and for judgment in his favor against defendant for whatever sum may be shown due to him as profits or otherwise.

Defendant denies all of the allegations of plaintiff's petition, except that he admits the existence of the partnership, his management of same, and represents that what small profits they had made from the operations of the sawmill were more than consumed in the fire which destroyed the entire mill plant and all lumber on hand at the time, amounting to 350,000 feet, and resulted in a loss to the partnership of $2,392.31, in addition to the capital invested in the mill plant.

Defendant prays that plaintiff's demand be rejected, and, on settlement of partnership affairs, for judgment against plaintiff for the sum of $2,553.08 for various items which defendant alleges plaintiff is indebted to said partnership, and such other amounts as may be found to be due on the trial of this suit.

The trial judge rendered judgment in favor of plaintiff decreeing the dissolution and settlement of the partnership, and ordering that all of the property owned by the partnership be partitioned between the plaintiff and defendant in equal portions. The judgment of the lower court also dismissed as of nonsuit the demand of the plaintiff against the defendant, and the reconventional demands of the defendant against the plaintiff, and ordered that the costs of the suit be paid by the defendant.

The sawmill was operated exclusively by the defendant as manager and on sums of money borrowed and advanced by him individually. Plaintiff contributed no funds for said purpose. The mill was in operation from the spring of 1915 until it was burned in September, 1916. The lumber sales amounted to $50,890.08, and the total expenditures to $54,337.24, during the 16 or 18 months the mill was in operation, leaving an indebtedness due by the partnership of $3,447.16, as shown by the accounts of the partnership business filed by the defendant in this case.

Plaintiff complains of his inability to obtain any statement from defendant as to partnership affairs. The testimony of one of the bookkeepers of defendant shows that plaintiff had access to the books of the concern, and that a complete statement was mailed him.

The mill employed from 13 to 17 hands, and the pay roll, as testified to by defendant, shows that the wages paid to the hands at the mill were not excessive.

The defendant swears to the correctness of the accounts rendered by him, and he is corroborated in this respect by the testimony of his bookkeepers. The entries made by those in charge of the books appear from the testimony to be genuine, and to have come through the usual channels of business. We fail to find any false entries, padding, or inflated items in these accounts.

[1] Plaintiff's entire case rests upon his sole and uncorroborated testimony. His claim against the partnership for $100 for the lumber used by defendant in covering the mill shed is not sustained by the testimony in the case. At the date of the formation of the partnership, plaintiff had been operating this sawmill and had 75,000 or 80,000 feet of lumber on the yards. He hired defendant to haul this lumber for him, paying him $1 per thousand. Defendant testifies that he hauled away the lumber, the value of which is claimed by plaintiff, and that it was not used by him at the mill. Plaintiff does not pretend to give in his testimony the quantity of lumber which he charges that defendant used, nor does he give the exact

value of same, but merely states that it was worth about $100. The testimony of plaintiff, in the first place, is too vague to base a judgment upon, and, in the second place, it is contradicted by defendant. His claim was, therefore, properly dismissed as of nonsuit.

Plaintiff objects to four items in the account of expenditures filed by defendant as being improperly charged.

Item 1 is for "Log haul and stumpage, $22,877.82."

, Plaintiff complains that defendant charged the partnership for the hauling of the logs at a price arbitrarily fixed by him, ranging from $3 per thousand to $6.50 per thousand; that defendant charged these prices after he had contracted with himself to do the hauling, but that when defendant was hiring the logs hauled by other parties, he paid at the rate of only $2 to $3 per thousand.

The plaintiff is in error in making this statement. The higher charge of $6.50 included, as shown by defendant's testimony, the cost of cutting, hauling, stumpage, and the delivery of the logs on the skidway at the mill. Some of this timber delivered at the mill cost the defendant $7 and some even $10, owing to where the timber lay and what it cost.

The testimony shows that defendant furnished all the money for the purchase of the stumpage, and for the payment of the cost of cutting and hauling. He bought this stumpage from various parties and at various prices. Some of the timber tracts were farther from the mill than others. Some of the timber was small and some virgin pine. Defendant charged 50 cents per thousand for cutting the Johnson, Knighten, Gandy, and Myers timber. He charged the partnership $2 per thousand for hauling the Johnson and Myers timber.

The Goodwill timber was virgin timber, and defendant charged the partnership from $6 to $6.50 for this timber delivered on the skidway; the charge including cutting, hauling, and stumpage. The testimony of defendant is corroborated to the effect that these charges were reasonable. The cost of hauling timber necessarily depends upon its location, the size of the timber, and the topography of the country. It necessarily fluctuates, according to these conditions, as to various tracts. The item on the account for cutting, hauling, and stumpage does not appear to us to be excessive under the conditions under which the timber was cut and hauled in this case.

Item 2, on the account of expenditures filed by defendant, is for, "Lumber haul, $3,323.61."

[2, 3] Plaintiff states in his brief that Mr. Hart testified that the lumber was being hauled from the sawmill to the railroad spur, and that he had hired other people to haul this lumber for 60 cents per thousand, but that afterwards he took the job himself and charged the partnership $1 per thousand, and for this reason this amount should be reduced proportionately. This is not a fair statement as to defendant's testimony. The testimony of Simmons is that he, Myers, and Hart were hauling at 60 cents in the summer of 1915, and that they were not making anything and he quit. This testimony is corroborated by defendant and Myers. If defendant could not haul or hire the hauling done at 60 cents per thousand, and if $1 was a reasonable price, he was justified in hauling it at that price. Simmons testifies that one could not make wages hauling the lumber for a smaller price, and defendant testifies to the same thing, and that $1 was a reasonable price. The plaintiff had some lumber on the yard at the time the partnership was entered into between him and defendant, and he testifies that he agreed to pay defendant $1 per thousand to haul this lumber. The account of defendant, moreover, shows that a great

deal of the lumber was hauled at 60 and 75 cents, but most of it is credited to him at $1 per thousand.

We think that item 2 of the expenditures for lumber hauls is a reasonable charge under the circumstances.

Item 3, on the account of the expenditures filed by the defendant, relates to "timber notes (taken up by A. L. Deloach), $1,620.-00."

Plaintiff contends that there is nothing in the record to show that this is a debt due by the partnership, and therefore it should be stricken off as an improper charge against the partnership.

In the partnership agreement we find this stipulation:

"Ed Hart further agrees to sign as surety note of G. W. Meyers in favor of A. R. Johnson for the sum of twenty-one hundred and sixty dollars payable at future dates for the purchase price of pine timber known as the Johnson timber."

[4] The testimony of the defendant shows that the A. R. Johnson timber, amounting to a million and a half feet, was cut, hauled, and delivered at the partnership mill. Ev. 75, 76, 77. It was dealt with as any other timber belonging to the partnership, and its purchase price was, therefore, a partnership liability. As shown by the deed from A. R. Johnson to George W. Meyers, four notes of $540 ($2,160) were given as evidence of the purchase price of the Johnson timber. The defendant indorsed these notes as surety, and got A. L. Deloach to take them up, and the partnership paid Deloach by shipping lumber to him for the amount advanced in taking up the notes. This was a proper charge against the partnership, which had received the timber and which had sold same when manufactured into lumber for its benefit.

[5] Item 4, on the account of the expenditures, filed by defendant, relates to, "Ed Hart (Expenses and salary as filer), $1,150.00."

This item is composed of $250 for actual expenses for ten months in 1915 in going to Shreveport, Homer, and other places on the business of the company. The other $900 was for salary not as manager, for which he was to receive no compensation under the partnership agreement, but for work done as foreman of the sawmill and for work done at the planer at night, for saw filing, etc., in addition to whatever he did as actual manager.

As defendant owed his entire time and services under the partnership agreement to the management of the affairs of the partnership without remuneration, this item of $900 is disallowed, and the item of $250 is allowed as a necessary expense of the partnership.

On January 1, 1917, there was in the Commercial Bank of Arcadia the sum of $5,212.-75 and in the First National Bank of Gibsland $225. Plaintiff complains that defendant took these sums without any authority and used them for his own personal benefit. The partnership books which showed the credit in the banks also showed that the partnership owed defendant $9,124.73. The testimony of Wren and Simmons showed that on January 1, 1917, when they balanced the books of the partnership, they charged defendant with these amounts and credited the banks with same, thereby balancing the accounts of the banks and leaving the partnership due defendant $3,686.90, after charging him with these amounts of cash.

[6] Our attention is called by plaintiff in his brief to an item of 1,168,098 feet of timber at $2 per thousand, amounting to $2,336.-19, which the defendant has charged against the partnership. Plaintiff complains that there is no record where this amount of timber was ever bought, and no reasonable explanation has ever been made for this charge. Plaintiff's reference to this item is of the vaguest character. He does not even give

the page of the transcript where the item can be found, nor does he refer to the pages of the transcript containing the testimony relating to this item. After diligent search, we find this item at page 60 of the transcript. It is entered as "Timber not given credit stumpage— 1,168,098 — $2.00 — 105 — $2,336.- 19." The reference "105" in this item is to journal entry, page 105, and this item is without date, either in the journal or on page 82 of the ledger, where it is posted. It is the first item on Exhibit 2B, and is included in the total of this exhibit under the head of "log haul and stumpage," which total is given as per adding machine list attached, as $22,817.82, but which is referred to in plaintiff's brief on page 4 as an item of $22,877.82.

Mr. Simmons, bookkeeper for the defendant, testifies as follows:

"Q. Examine document 2B, and state if that is correct?

"A. That is the log haul and stumpage, and that is a correct statement of all logs hauled and the stumpage as shown by the books of the partnership.

"Q. What is the total amount of that statement?

"A. $22,877.82." Ev. p. 143 (68).

Witness explained that "stumpage" meant the cost of the timber, and "logging" is the hauling, putting the timber down at the mill.

After the mill was burnt, defendant employed Prof. Wren to audit the books of the partnership, and he, with the assistance of Simmons and Sufforth, the bookkeeper at the time the mill was burnt, checked up all the transactions from the beginning of the existence of the mill to the end. Not only do Wren and Simmons testify to the correctness of item 2B, according to the books of the company, but to the correctness of the entire accounts filed herein by defendant.

About January 1, 1916, C. E. Smith, a bookkeeper for the Shreveport Lumber Company, was called upon to assist the defendant in balancing his books and getting out a state-ment. He also testifies to the correctness of the accounts filed by the defendant.

In reference to item 2B, of $22,877.82, Smith testifies that said item is correct from the amount of stumpage turned into the office. The defendant also swears to the correctness of the account.

Counsel for plaintiff has attempted to discredit item 2B of $22,877.82 on the ground that because the partnership agreement is of date February 23, 1915, the defendant could not have hauled 1,168,098 feet of lumber during the five remaining days in that month.

Defendant does not pretend that he did so. He states that he was rebuilding the mill during the month of February and that he put all of his teams to logging and hauled the timber.

When presented with the document marked 2B, log haul and stumpage during February, 1915, the attention of defendant was directed to the charge at $2 per thousand, and he was asked what that item was for, and he announced that it was for hauling. He also states that some of the first timber cut and hauled to the mill was from the Johnson tract, the timber on which, as the deed shows, was bought for a lump sum and not by the thousand feet. Ev. 174, 175.

The evidence shows that the sawmill was using timber from a number of different tracts: The Johnson tract, the Knighten tract, the Yarborough tract, the Myers tract, the Gandy tract, the Wilbourne tract, the Goodwill tract, the George Stuart tract, Kizer Holiday tract, and the Charley Sherrill tract. Defendant testifies that he cut from the Johnson tract alone from 1,000,000 to 1,500,000 feet. The facility for a large supply of timber is shown by these facts, and the item of 1,168,098 feet is charged in a lump sum, without reference to any particular tract. As the item is entered on page 60 of the transcript as, "Timber not given credit," it was evidently overlooked, and, in

checking up the accounts for stumpage and hauling, was discovered. It may have consisted of a number of different items. It is given a date of November 30 on page 60 of the transcript, and clearly refers to the year 1915, as the mill was destroyed by fire in September, 1916. The defendant has been corroborated as to a number of items charged in his account, which is stated to be correct by every bookkeeper who has examined it, and by the defendant himself. We have found no evidence of any padding or fraudulent entries, nor do we consider plaintiff's objection to this particular item of any weight, in the face of the other facts and circumstances in the case.

[7] The salary of the bookkeeper was paid by the partnership. Plaintiff bound himself in the partnership agreement to pay same, but failed to do so. This is an item of $1,227.95, and, on settlement of the partnership affairs, plaintiff owes defendant, who paid said salary, one-half of said sum, to wit, $613.97, as claimed in defendant's reconventional demand.

When plaintiff sold to defendant a half interest in the sawmill plant and certain timber and rights for the sum of $750, he made said sale with full warranty of title and gauranteed that the property sold was free from incumbrances. The partnership was compelled to pay the following items due by plaintiff and included in said warranty:

F. H. Drake, carriage and set works.......... $ 60 00
M. M. Atkins, pulley............................ 25 00
Weaks Supply Co., pump, piping and fixtures 185 85
W. H. Pace (two buggies), afterwards taken
by him...................................... 15 00
                                              ———
                                              $285 85

Defendant claims in reconvention that plaintiff, on settlement of the partnership affairs, owes him one-half of said amount of $285.85, or $142.92. The claim is sustained by the testimony in the case.

Defendant also claims in his answer that he has advanced funds to the partnership at various times and in various amounts, and has paid all the debts of said partnership, which he alleges is indebted to him in the sum of $3,591.98, and that plaintiff owes defendant one-half of this amount, to wit, $1,795.99, on final settlement, and for which difference prays for judgment in reconvention.

A recapitulation of the affairs of the partnership shows debits of $53,437.24 and credits of $50,890.08, or debits due by the partnership in the sum of $2,547.16, for one-half of which, to wit, $1,273.58, plaintiff is liable to defendant. Plaintiff also owes to defendant the additional sums of $613.97 and $142.92, as herein stated above, or a total of $2,030.47.

[8] After the mill was destroyed by fire, the only assets left to the partnership consisted of an engine, boiler, and some pipe; property which is not susceptible of division in kind, and which, therefore, must be sold; the indebtedness of plaintiff to defendant to be paid out of plaintiff's half of the proceeds of said sale.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended, so as to sustain the reconventional demand of defendant in the sum of $2,030.47, and so as to order that all of the partnership assets be sold, after due advertisement and according to law, and it is now ordered, adjudged, and decreed that said judgment as amended be affirmed, and that this case be remanded to the lower court for the settlement of the affairs of said partnership in accordance with the views herein expressed. All costs to be paid by the partnership.